# GENERAL SESSIONS.

## NEW YORK, FEBRUARY, 1819,

The People
v.
James W. Lent.

} ASSAULT AND BATTERY.

The General Sessions have jurisdiction over offences committed on Governor's Island, notwithstanding it has been ceded to the U. S., and notwithstanding it has been declared in the act of session (Feb. 15th, 1800, 1 R. L. 189,)the place "shall hereafter be subject to the jurisdiction of the U. S."

A plea to exclude the jurisdiction of the Sessions,

Present—Hon. *C. D. Colden*, Mayor.

*Pierre C. Van Wyck, Esq.*, Counsel for the Prosecution.
*Anthon,* Counsel for the Defendant.

*By the Court.*—The defendant is indicted for an assault and battery on James Dusenbury, a deputy sheriff, in the execution of his office. To this indictment the defendant has pleaded, that the offence, if any, was committed on Governor's Island, and that this court has not jurisdiction of the offences committed on that Island, the same having been ceded by the state to the United States. To this plea the district attorney has demurred specially, and asssigned for cause, that the plea does not show any other court competent to try the case. The defendant has joined in demurrer, and the validity of the plea is now to be decided.

For our present purpose, it must be taken as conceded, that the offence charged in the indictment was committed in a part of the state of New York, which is within the bounds of the city and county of New York, and that this court would have cognizance of the case, if it must show that the place was purchased by the United States; being subject to their jurisdiction, is not sufficient. It must appear by some act, on the part of the government, that they intend to exercise exclusive jurisdiction.

Some powers of the general government are from their nature exclusive; there are other powers where congress has a right to exclude the state authority, but until they o so the jurisdiction of the state is not taken away.

has not been deprived of its jurisdiction as to all crimes committed on Governor's Island, by the constitution and laws of the United States, and by an act of the legislature of this state, passed 15th of February, 1800, (1. R. L. 189.) by which it is enacted, that "all that island called Governor's Island, on which Fort Jay is situated, bounded on all sides by the waters of the East River and Hudson River, shall hereafter be subject to the jurisdiction of the United States." There is a proviso, reserving the right to serve process issuing under the authority of the state; but as a right to serve process, and criminal jurisdiction as to offences, are totally distinct, and the former does not embrace the latter, the proviso may, in this case, be laid entirely out of consideration. But it may be observed, that if this offence should have been committed on the officer, when he was attempting to serve process, the proviso would be absolutely nugatory; so long as congress have not legislated on the subject, this court cannot punish the offender.

By the constitution of the United States, (art. 1. s. 8.) congress have power to exercise exclusive legislation in all cases whatsoever, over such district as might become the seat of government of the United States, " and to exercise like authority over places purchased by the consent of the legislature of the state in which the same shall be, for the erection of forts, magazines, arsenals, dock yards, and other needful buildings, and to make all laws which shall be needful and necessary for carrying into execution the foregoing powers."

The plea to exclude the jurisdiction of this court will not be good, unless it shows that Governor's Island was a place purchased by the government of the United States, with the consent of the legislature of this state, for some or one of the purposes mentioned in the before-mentioned article of the constitution of the United States; or, at least, it must appear to the court that Governor's Island is such a place. The plea does not show it; on the contrary, it avers that Governor's Island was under the jurisdiction of the United States. Now, this is not the fact, unless it can be shown that the United States has accepted the jurisdiction, which has not been done, and, I believe, cannot be done. The law of our legislature, above quoted, shows that neither terri-

NEW YORK
Febr'y, 1819.

The People
v.
Lent.

NEW YORK
Febr'y 1819.

The People
v.
Lent.

tory nor jurisdiction was absolutely ceded. The Island was merely made subject to the jurisdiction of the United States, if the United States pleased to exercise jurisdiction over it. No act of congress has been referred to by the counsel for the defendant, nor can I find that any exists by which the United States can be considered as having exercised their exclusive right of legislation as to the place in question; or, indeed, any legislation whatever in respect to crimes committed on Governor's Island, or in any other place ceded to the United States under the 8th article of the constitution, except as to the District of Columbia. The acts of congress organizing the Courts of the United States, make no provision on this subject, and do not give any United States Court cognizance of the crimes committed within the limits of the ceded places.

A law of congress, passed 20th March, 1794, (2 L. U. S. 381. last ed.) provides that certain harbours therein mentioned, of which New York is one, shall be fortified under the direction of the president of the United States. And the same act authorizes the president to receive from any state, in behalf of the United States, a session of the lands on which any of the fortifications, enumerated in the act, might be erected, or where such cessions should not be made, to purchase such lands on behalf of the United States. Provided, that no purchase should be made where such lands were the property of a state.

Under this act, (1 U. S. Laws, 688. new ed.) Ellis and Oyster Islands, situate in the bay of New York, having been private property, were bought by the government of the United States, and they, by the name of Bedlow's and Oyster Islands, together with Governor's Island, by the before mentioned act of our legislature of 1800, were declared thereafter subject to the jurisdiction of the United States; but Governor's Island having been the property of the state, there was no other legislative or executive act, that I have been able to discover, respecting it, either of the state or general government, than those which have above noticed. The United States government seems to have considered the act of our legislature sufficient for its purpose, and to have thought it unnecessary to take any other step.

Supposing, then, that the declaration by our state legislature be equivalent on their part to a transfer to the United States by purchase, yet there is in wanting some act on the part of the United States legislature or government to complete the purchase, or to show an acceptance of the grant, if it may be so called, made by the state.

If the state legislature were to declare that the county of Richmond should be subject to the jurisdiction of the United States, could such a law supersede the state authorities, unless it appeared by some act of the general government, that they wanted and accepted the county of Richmond as a purchase, (I mean a purchase in the technical sense of the word,) for the purpose for which, by the constitution of the United States, the general government has a right to make purchases or acquire territory, within the limits of the respective states?

There is nothing to show that the United States or its government ever applied to have Governor's Island made subject to its jurisdiction, or that they were willing to accept, or ever did accept it, as a place over which they would exercise their power of exclusive legislation.

Congress has shown that, in its opinion, an acceptance on the part of the United States was necessary, to give it power in a territory ceded by the states, under a provision in the same article of the constitution of the United States. After the District of Columbia was ceded by the States of Virginia and Maryland, congress passed an act declaring their acceptance of the session. ( 1 L. U. S. 132.)

By admitting that Governor's Island is a place, as to which the United States has accquired the power to legislate exclusively, yet to exclude the state authority, I think it should have been shown by the plea, or at least it should otherwise appear, that they have exercised this power given to them by the constitution. And this, it must be conceded, they have not done. No law has been passed by congress, in virtue of which any court of the United States could have recognizance of the offence charged in this indictment. It therefore follows, that if the defendant is not answerable to this court, not only he, but all who may commit crimes even of the greatest enormity in the same place, will be wholly irresponsi-

N'W YORK,
Febr'y, 1819.

The People
v.
Lent.

ble. We should find to our surprise, I think, that we have, in the bosom of our territory, many places where criminals will be more out of the reach of condign punishment than they were of old in cities of refuge, or more modernly in the sanctuaries of bigotry.

I think we are bound to presume, that the national and state legislatures have not been so improvident; and that the state legislature would not have subjected the place in question to the jurisdiction of the United States, and that congress would not have failed to legislate for it, if it had not been understood by both legislatures, that till congress did exercise their exclusive power, the state was to retain its wonted jurisdiction.

Let it be recollected, that in the heart of this populous city, there are several places of this description. One of them is a part of the battery, our great public walk, in which a murder might now be committed with impunity, if the murderer is not punishable by our state laws.

An argument from inconvenience is, to be sure, not conclusive, but it ought to have its influence where it is so manifest.

The opinion that the states individually have, in some instances, concurrent powers with congress, and that in other instances the state governments may exercise powers, which, by the constitution of the United States, are given to congress, but which powers congress refrain from exercising, is not new. The powers given to congress are not necessarily exclusive. Indeed, the introduction to the article of the constitution which specifies the powers of congress, seems cautiously worded, so as to exclude the idea that the state authority was to be superseded as to all objects to which the power of congress is thereby extended. It is said that congress shall have power as to the enumerated objects, and not that they shall have *the* power, or, in other words, all power as to the specified matters.

As to some of the powers given to congress, they are necessarily exclusive from their very nature; because, as to them, separate powers cannot be co-existent; as for example, to borrow money on the credit of the United States, to erect inferior tribunals, &c. But there are others of these powers which are of different charac-

ter, and as to which the authority of the states is not excluded, and as to some matters, congress have the right to exclude the state authority by the exercise of their power to legislate as to these matters. But until congress does exercise their power, the state authority remains.

Of this latter description, I consider the power now under consideration—congress have power to, that is, they may exercise exclusive legislation over the places purchased by the consent of the state legislature, as they have done with respect to the District of Columbia. But they are not obliged to exercise that power ; and if they do not, the state authority is, in my judgment, unimpaired.

It may be inferred, I think, that our state legislature which passed the law of 1800, under the plea to which the jurisdiction of this court is formed, had this view of the subject. The jurisdiction of the state is not thereby relinquished, as it is by some other laws of our own in relation to other places. Nor is Governor's Island declared to be under the jurisdiction of the United States, but the law declares that it shall, therefore, be subject to the jurisdiction of the United States.

The language of the legislature 1 understand to mean, that they give their consent that congress may exercise their power exclusively to legislate for Governor's Island ; the place is made subject to the exercise of that power ; but until it be exercised by congress, it is, in my opinion, to use the words of the twelfth article of the amendments to the constitution of the United States, " a power not prohibited to the state, but reserved to it." I have read with great attention, the case of the Commonwealth v. Clary, (8 Mass. Rep. 72.) decided in the Supreme Judicial Court of Massachusetts. And I hope I need not say, that the opinion of Chief Justice Parsons, has had all that consideration which his high character as a lawyer and a judge must always command. That case and this are not exactly similar. In that case it appeared that a law of Massachusetts gave the consent of that state, that the United States should purchase a tract of 640 acres for erecting forts, &c. That a purchase was made pursuant to that law, of lands which were applied by the United States to the contem-

NEW YORK
Feb'y, 1819.

The People
v.
Lent.

plated purpose. Here then, were the concurrent acts of the state and of the United States; whereas in our case, we have nothing to show that the United States ever availed themselves of the power granted by this state.

But with great deference to the distinguished abilities of Chief Justice Parsons, I must be permitted to suggest, that he has made an important mistake in quoting from the constitution, the clause which gives congress power to legislate in respect to places which the United States may acquire with the assent of the states. He says that by the constitution, congress have the exclusive power of legislation as to these places. If this were so, then there could be no question but that, as to them, the authority of the states must immediately cease on their becoming subject to the United States. But this is not the power given to congress by the constitution. By that instrument it is declared that, as to such places, they shall have the power to exercise exclusive legislation. This power they need not exercise unless they think fit, and in our case, have not seen proper to exercise. And, therefore, there is, in my opinion, as yet nothing to preclude the jurisdiction of the state courts ; our law, too, which only makes Governor's Island subject to the jurisdiction of the United States, is different from the Massachusetts law, which gave the consent of that state to a purchase by the United States.

But if this opinion of the Massachusetts court be applicable to the case now to be decided, this court, notwithstanding all its respect for the Massachusetts bench, cannot suffer itself to be controlled by it. Was there a positive decision of our own court, or of a superior court of the United States, I should feel myself bound by it; because I hold it the duty of a judge of a subordinate, if not an inferior court, as this is, to acquiesce in the decisions of its superior tribunals; for if any inferior judge feels himself at liberty, on all occasions, to indulge his own speculations, we would be in that condition which is deplored by Lyttleton as miserable, where the laws are vague and uncertain. I shall, with the more reluctance differ from the court of Massachusetts, did I not consider the decision now given as supported by the opinion of our own highest court on analogous points. I refer to the case of Livingston and Fulton against Van

Ingen, ( 9 Johns. Rep. 507.) decided in the court of Errors.

The People
v.
Lent.

Inasmuch, therefore, as it is not shown by the plea, or otherwise, and it could not be shown, that the United States have accepted the act of this state respecting Governor's Island, nor that they have exercised the power of exclusive legislation, granted by the constitution to congress as to that island, it is the judgment of the court that the plea be overruled, and that the defendant answer over to the indictment.

The whole merits of this case appear on the record, so that the defendant can take it to the Supreme Court with very little trouble and expense ; and it is a matter of so much importance in the administration of justice, that we are desirous that it should be settled by higher authority than this court.