(155 App. Div. 363.)

FARLEY, State Excise Com'r, v. DITTMANN et al.

(Supreme Court, Appellate Division, Second Department.   February 28, 1913.)

INTOXICATING LIQUORS (§ 104*)—LICENSES—NOTICE—ABANDONMENT.

   Where a tenant was using the leased premises solely for the business of ordinary traffic in liquors and not as a "hotel," as that term is defined in Liquor Tax Law (Consol. Laws 1909, c. 34) § 30, his notice that he abandoned the business of trafficking in liquors on such premises, filed pursuant to section 8 of such statute before the taking effect of the amendment of 1910 (Laws 1910, c. 494), was not ineffective because the owners did not join with him in executing and acknowledging it.

   [Ed. Note.—For other cases, see Intoxicating Liquors, Cent. Dig. § 109; Dec. Dig. § 104.*]

Appeal from Trial Term, Suffolk County.

Action by William W. Farley, as State Commissioner of Excise, against C. Phillip Dittmann and others. From a judgment dismissing the complaint, plaintiff appeals. Reversed and rendered.

Argued before JENKS, P. J., and THOMAS, CARR, WOODWARD, and RICH, JJ.

Louis M. King, of Schenectady, for appellant.
Rowland Miles, of Northport, for respondents.


CARR, J.  In September, 1911, the defendants Dittmann made application in writing for the issuance of a liquor tax certificate for traffic in liquors in certain premises to be used as a hotel in the village of Amityville. · This application was made on the usual official printed form.  In such official form of application are set forth a number of questions to be answered in writing by the applicants.  Among such questions and answers were the following:

"(11) Since what date have said premises been continuously occupied for such traffic in liquors?  Answer: 1860."

"(34) Has a notice of abandonment of such traffic at said premises, pursuant to the provisions of subdivision 9 of section 8 of the Liquor Tax Law, been heretofore filed?  Answer: No."

The defendant the Fidelity & Casualty Company joined in a bond, accompanying said application, of which one of the expressed conditions was as follows:

"There is no material false statement in the application statement for said liquor tax certificate."

A certificate was issued to the applicants, who thereupon entered into the business of trafficking in liquors at their hotel.  This action is brought to recover from the defendants the amount of the penalty of said bond on the ground that the questions hereinbefore specified were material, and that the answers to them were false.  On the trial of this action before the court without a jury, judgment went for the defendants, and the plaintiff has appealed.

   It appears that in August, 1909, the defendants Dittmann purchased

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

the premises in question at a foreclosure sale and took title thereto by deed which contained a clause as follows:

"Subject to a certain lease dated March 8, 1909, made to B. F. Conklin expiring on the first day of April, 1910, at the annual rental of $700 per year. Said lease may be terminated on sixty days' notice in writing."

Conklin was then carrying on the business of trafficking in liquors on said premises under a certificate issued in September, 1909, on an application which set forth that said premises were to be used as a hotel. This certificate expired by force of statute on September 15, 1910 (Consolidated Laws, c. 34; Laws of 1909, c. 39, § 9). Conklin thereupon filed an application for a new certificate, in which he stated expressly that the business of keeping a hotel in connection with the traffic in liquors was *not* to be carried on thereafter by him on said premises, and on said application he received a new liquor tax certificate for the year beginning September 15, 1910. In February, 1911, the defendants Dittmann entered upon the premises in question and began to make such alterations and new constructions thereon as to actually oust Conklin from said premises, by rendering the same uninhabitable and unsuitable for the transaction of business therein for a period of several months. Conklin removed his goods from said premises, and shortly thereafter filed with the county treasurer of Suffolk county a written notice, executed by himself alone, in which he declared that he had abandoned the business of trafficking in liquors on the premises in question, and in which he specified a new location for his said business, in the same village, and thereafter he conducted said business at said new location under his said certificate until the expiration thereof. It is about this action of Conklin in abandoning, or attempting to abandon, the traffic in liquors as to the premises of the defendants Dittmann, that this whole controversy centers.

By chapter 494 of the Laws of 1910, which went into effect June 15, 1910, a new subdivision (9) was added to section 8 of the Liquor Tax Law. This new legislation established a ratio in which liquor tax certificates were thereafter issuable only to the extent of one certificate to each 750 of the population of any town, village, or city. It was conceded on the trial of this action that in September, 1910, the full ratio of liquor tax certificates to the population of said village of Amityville had been reached, exclusive of the certificate issued to the Dittmanns, unless their premises fell within certain exceptions set forth in the act of 1910. Among such exceptions, so set forth, were the following:

"Any premises in which such traffic in liquors was lawfully carried on at some time within one year immediately preceding the passage of this act, provided such traffic was not abandoned thereat during the said period, or to any premises that have been continuously occupied for a hotel from and including the twenty-third day of March, eighteen hundred and ninety-six; nor shall this prohibition apply * * * to any premises in which, during said period of one year, or any part thereof, such traffic in liquors has been temporarily suspended, but not abandoned."

The statute of 1910 provided further as follows:

"At any time during the unexpired term of any liquor tax certificate issued for traffic in liquors under the provisions of subdivision one of this sec-

tion in any premises in which such traffic may lawfully be carried on, a˙ notice stating that such traffic in liquors is abandoned at the premises named in such certificate may be filed with the county treasurer or special deputy commissioner of excise of the county or borough in which the certificated premises are located, which notice shall also particularly describe some other premises in which it is intended to carry on such traffic, which premises shall be situated in the same city, borough, village or town as that in which the abandoned premises are located. In the case of a hotel, such notice shall be in writing and executed and acknowledged by the certificate holder and the owner or owners of the certificated premises," etc.

This section was amended by chapter 298 of the Laws of 1911, which took effect June 9, 1911, by excluding from this particular provision hotels in cities of the first class containing less than 50 bedrooms.

Conklin filed his notice of abandonment in May, 1911, and its sufficiency to be tested under the statute as it then stood. The argument of the respondents is that when Conklin attempted to abandon their premises in May, 1911, said premises had been used as "a hotel," and therefore his notice of abandonment was invalid and ineffective in that it was not executed and acknowledged by the owners (they themselves) of the then certificated premises which Conklin sought to abandon as a place for traffic in liquors under his liquor tax certificate. If this contention be sound, then Conklin was in a most unfortunate condition when the defendants practically evicted him from their premises. He had a liquor business and a liquor tax certificate, but no place in which he could carry on the business. It would seem, if this contention be sound, that he had no alternative but to surrender his liquor tax certificate and go somewhere else to make his livelihood. If the statute works out such result, we are powerless to help him. When the Legislature established this system of ratio of population to certificates, it had in mind that landlords might suffer at the hands of their tenants, but it could not have been wholly insensible to the fact that in cases of hotel properties tenants might also suffer at the hands of landlords, and the amendment of 1911 was passed, no doubt, in partial recognition of this fact. But it does not apply here, so we must take the statute as it is. Did Conklin's situation fall within the provision of the statute, "in the case of a hotel," etc?

It is argued by the appellant that as Conklin had stated in his application for a liquor tax certificate, in September, 1910, that he did not intend to carry on the business of a hotel under said certificate, the character of the premises must be determined by the statement in the application, and for this there is an authority with none reported to the contrary. Matter of Barnard, 48 App. Div. 423, 63 N. Y. Supp. 255. Proofs were taken at the trial on the question of whether in fact Conklin did carry on the business of a hotel in connection with traffic in liquors under the certificate of 1910. Were these proofs to be considered properly to show the true character of the business in opposition to the statement in the application, they fall far short of showing that the business of a hotel was conducted by Conklin in connection with the liquor tax certificate of 1910. The statute in ques-

tion gives its own definition of the word "hotel" as used in it. Such definition is to be found in section 30, where it is declared as follows:

"The term 'hotel' as used in this chapter shall mean a building regularly used and kept open as such for the feeding and lodging of guests, where all who conduct themselves properly and who are able and ready to pay for their entertainment, are received if there be accommodations for them, and who, without any stipulated engagement as to the duration of their stay, or as to the rate of compensation, are, while there, supplied, at a reasonable charge, with their meals, lodgings, refreshment and such service and attention as are necessarily incident to the use of the place as a temporary home," etc.

The testimony of Conklin was that he had discontinued such business and confined himself to that of ordinary traffic in liquors, and the proofs to the contrary do not show, as before stated, any regular conduct of a hotel business in connection with the certificate of 1910. The statute did not provide that Conklin could not change the character of his business in said premises without the consent of the owners of the premises. Therefore when Conklin filed his notice of abandonment in May, 1911, the premises of the defendants Dittmann were not used as "a hotel" in the meaning of the statute, apart from the fact that they were practically torn apart by the defendants and incapable of any such use through their own deliberate conduct, and his said notice was not ineffective because they did not join in it by executing and acknowledging it.

The seventh and fifteenth findings of fact made by the trial court are reversed, and the judgment dismissing the complaint with costs is reversed, with costs, and judgment is awarded to the plaintiff, with costs, as provided in section 1317 of the Code of Civil Procedure. All concur.